# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE MILLER, | 1:09-CV-01475 LJO GSA HC |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | |
| SUSAN FISCHER, et al., | |
|     Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections serving an indeterminate sentence of twenty-five years to life for his 1983 conviction in Humboldt County Superior Court for first degree murder with use of a firearm. (Pet. at 2.)

On May 2, 2006, Petitioner's third parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine his eligibility for parole. (HT[1] at 1.) Petitioner attended the hearing and was represented by an attorney. (HT at 1.) At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. (HT at 58.)

Petitioner filed a petition for writ of habeas corpus in Humboldt County Superior Court. See Answer, Exhibit 1. On May 7, 2008, the petition was denied in a reasoned decision. See

---

[1] "HT" refers to the hearing transcript that is contained in Exhibit 1 of Respondent's Answer.

1  Answer, Exhibit 6. On July 11, 2008, Petitioner filed a habeas petition in the California Court of
2  Appeals, First Appellate District. See Answer, Exhibit 7. The petition was denied on
3  November 12, 2008. See Answer, Exhibit 8. On December 3, 2008, Petitioner filed a petition for
4  writ of habeas corpus in the California Supreme Court. See Answer, Exhibit 9. On June 10, 2009,
5  the petition was summarily denied. See Answer, Exhibit 10.
6        On August 21, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.
7  The petition challenges the 2006 decision of the Board of Parole Hearings denying parole. On
8  November 6, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to
9  Respondent's answer on December 9, 2009.

**FACTUAL BACKGROUND**[2]

On August 24, 1982, the dead body of Norman Peerotti was discovered in the bedroom of his home. An autopsy revealed that the body had multiple stab wounds with the fatal blow located in the chest. The doctor could not determine the sequence in blows but was able to state that the wound to the chest would have caused the victim to faint within fifteen seconds and death would have been within minutes thereafter. Further, some of the stab wounds may have been inflicted after death. Police investigation revealed that Petitioner and his two male companions were in the victim's home on August 23, 1982. Petitioner, his two companions and the victim engaged in drinking alcoholic beverages, smoking marijuana and homosexual activity.

**DISCUSSION**

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

---

[2]The information is derived from the factual summary set forth in the parole hearing proceedings. (HT 6-7.)

2

The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

3

grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an

4

1 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
2 also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
3 protections that particular situations demand). "[S]ince the setting of a minimum term is not part
4 of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
5 constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at
6 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole
7 board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate
8 must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be
9 afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied
10 parole, the inmate must be told why "he falls short of qualifying for parole." Id.

11       As to these procedural protections, Petitioner was provided with all that is required. He
12 was given advanced written notice of the hearing, an opportunity to submit materials for the
13 Board's consideration, an opportunity to be heard, representation by an attorney, and a written
14 decision explaining the reasons parole was denied.

15       "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not
16 comport with 'the minimum requirements of procedural due process,' unless the findings of the
17 prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454
18 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of
19 Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846,
20 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s]
21 clearly established that a parole board's decision deprives a prisoner of due process with respect
22 to this interest if the board's decision is not supported by 'some evidence in the record,' or is
23 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination
24 was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and
25 regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at
26 851. Here, the Court must look to California law and review the record. In reviewing the record
27 and determining whether the "some evidence" standard is met, the Court need not examine the
28 entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass,

461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; and 2) Minimal participation in self-help programs. (HT at 52-58.)

First, the Board determined that Petitioner committed the offense in an especially heinous, atrocious or cruel manner.[3] Specifically, the Board found that the offense was carried out in a calculated and dispassionate manner pursuant to § 2402(c)(1)(B). The superior court found the finding was supported by some evidence, noting that the victim was stabbed four times in the chest with one stab being so vicious as to tear the victim's heart. In addition, the victim was asphyxiated and stabbed even after death. The Board also found that the victim was abused,

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

6

defiled and mutilated pursuant to § 2402(c)(1)(C). The superior court determined the evidence supported this finding given that Petitioner and his companions administered stab wounds even after the victim had died. Moreover, Petitioner urinated on the victim's dead body. The Board also found that the offense was carried out in a manner demonstrating an exceptionally callous disregard for human suffering per § 2402(c)(1)(D). The superior court found some evidence supported this finding since the victim continued to gurgle and suffer after the initial stab wound while Petitioner and his companions asphyxiated and repeatedly stabbed him. Finally, the Board found that the motive was very trivial in relation to the crime pursuant to § 2402(c)(1)(E). The superior court determined some evidence supported this finding in light of the fact that the only apparent reason Petitioner killed and wounded the victim was because the victim refused to participate in a property fraud scheme.  Petitioner contends, however, that the killing was an accident, that the victim essentially threw himself on the knife. This contention is incredible; Petitioner was found guilty of first degree murder, not manslaughter.  Accordingly, given the facts of the offense, the superior court's determination that some evidence supported the Board's finding that the offense was especially heinous, atrocious or cruel as to be a sufficient basis to deny parole was not unreasonable.

      The Board also found Petitioner's minimal participation in self-help programs, particularly in the areas of anger management and substance abuse rehabilitation, demonstrated a danger to the public if released. According to the record, Petitioner drank alcohol and sniffed glue before the offense. Petitioner also had a history of paint sniffing. In addition, the record reflects that Petitioner had great difficulty in explaining why he committed such a brutal, vicious attack and then proceeded to defile the victim's body.  The psychological report also noted that Petitioner needed to be observed and evaluated over a longer period of time. The state court determination that some evidence supported this finding was not unreasonable.

      The Board considered the positive factors favoring parole release. The Board commended Petitioner for his participation in programs up to his point. The Board also noted Petitioner had excellent work reports. It was also noted that Petitioner had viable employment and parole plans. Nevertheless, the Board concluded Petitioner remained an unreasonable risk of danger to the

public in light of the circumstances of the offense and his lack of self-help programming. The state court finding that some evidence supported this determination was not unreasonable.

Petitioner has not shown that the state court resolution of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). The petition should be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **February 5, 2010**                        **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE